1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSE GUADALUPE CAMACHO,

11              Petitioner,                    No. CIV S-09-988 GEB CHS P

12        vs.

13   M. MCDONALD,

14              Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16                              I.  INTRODUCTION

17              Petitioner Camacho, a state prisoner, proceeds pro se with a petition for writ of

18   habeas corpus brought pursuant to 28 U.S.C. § 2254.  Petitioner stands convicted in the

19   Sacramento County Superior Court, case number 99F08750, of eluding a pursuing peace officer

20   and driving under the influence of alcohol or a drug, for which he received a sentence of two

21   years in prison plus a consecutive term of 25 yeas to life.

22              In a previous order of this court, it was found that the pending petition is a mixed

23   petition because it contains one exhausted claim and one claim that is only partially exhausted.

24   (*See* Order, Doc. 22.)  Accordingly, petitioner was ordered to advise the court whether he wished

25   to return to state court to fully exhaust state remedies, or, in the alternative, whether he wished to

26   proceed only on the exhausted portions of his claims.  (*See* Orders, Docs. 22 and 26.)  Petitioner

1    indicated in response that he wishes to return to state court.  Petitioner has also filed a motion for

2    a stay and abeyance while he exhausts state court remedies.  (*See* Motion to Stay, Doc. 24.)

3    Respondent opposes the motion.  Based on further thorough review of the record and applicable

4    law, it is recommended that the petition be denied on its merits and that petitioner's motion to

5    stay be denied as moot.

6                                         II.  BACKGROUND[1]

7                    On an evening in October 1999, petitioner entered a closed portion of a

8    Sacramento freeway on foot.  He got into a maintenance worker's unattended truck, drove away

9    on the freeway and on local city streets, proceeded recklessly through several red lights, and

10   ultimately parked at the Sacramento County jail where he surrendered to pursuing peace officers.

11   An officer opined that, when apprehended, petitioner appeared to be under the influence of an

12   intoxicant.  A criminalist determined that a blood sample taken from petitioner contained

13   methamphetamine.

14                   After petitioner was charged with the offenses, he arranged for the posting of a

15   bail bond but failed to appear for court proceedings in November 1999.  The bail bondsman

16   received information that petitioner was hiding near Mexicali, Mexico.  In October 2000, the

17   bondsman and immigration officials spotted him near a small village.  When the immigration

18   officials tried to apprehend petitioner, he fled the area in a truck at high speed.  The bondsman

19   did not succeed in his attempts to capture petitioner, who was not returned to court until August

20   2005.

21                   At trial, admission of court documents and expert fingerprint testimony

22   established that petitioner had been convicted of 10 charged prior convictions.  Specifically, in an

23   ───────────────

24         [1] This summary of background facts and another where designated herein were adapted
     from the unpublished opinion of the California Court of Appeal, Third District, on direct appeal
     of petitioner's criminal convictions.  *See People v. Camacho*, No. C054861, slip op. at 1-4 (Cal.
25   Ct. of App. 3rd Dist. 2007).  Since these factual findings have not been rebutted with clear and
     convincing evidence, they are presumed correct.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336
26   F.3d 992, 1000 (9th Cir. 2004).

April 1986 proceeding, he was convicted of two robberies, two attempted robberies and five assaults; in a December 1992 proceeding, he was convicted of assault with a firearm.

Petitioner testified on his own behalf that his consumption of methamphetamine caused him to behave irrationally, believe that he was being followed or persecuted, and experience memory lapses. At the time of the instant offenses, he believed he was being pursued by people with a gun. In response, he ran onto the freeway, got into a vehicle and drove off, heading for the county jail where he thought help would be available. Petitioner did not recall having been pursued by officers, but he believed that he had told them of his fear of being kidnapped.

In his testimony, petitioner admitted the charged prior convictions, stating: "I was 17, made some bad choices, and I suffered those convictions... [¶] ... [¶] I mean it was a one-night incident that took approximately six hours."

Petitioner explained his failure to appear in court by stating, "I didn't come to court because I was afraid of the three-strike law and that people wouldn't believe my story, because it seemed like nobody believed me."

A psychiatrist who evaluated petitioner at a mental health treatment facility on the day before the incident testified that he had diagnosed him as suffering from amphetamine-induced psychotic disorder, which mimics paranoid schizophrenia, and can result in paranoid delusions. A forensic psychiatrist who reviewed his medical records but did not interview him reached the same diagnosis. The defense did not contend that petitioner was mentally incompetent at the time of trial. The defense theory of the case, however, was that petitioner was unable to form the requisite intent at the time of the offenses due, in part, to his amphetamine-induced psychotic disorder.

Petitioner was convicted by jury of eluding a pursuing a peace officer and driving under the influence of alcohol or a drug. The jury found true the allegations that he had incurred 10 prior serious or violent felony convictions and had served two prior prison terms. A count of

taking a motor vehicle without the owner's consent was dismissed in the interest of justice after the jury declared its inability to reach a verdict.  He was sentenced to two years plus a consecutive term of 25 years to life.

Petitioner appealed his convictions to the California Court of Appeal, Third District, alleging that the trial court erred in allowing the prosecutor, over the defense's objection for relevance, to cross-examine petitioner about the facts underlying his prior convictions.  The state appellate court denied the claim and affirmed the judgment against petitioner. The California Supreme Court denied a petition for review.  Petitioner raised the same issue in a petition for writ of habeas corpus to the Sacramento County Superior Court; it was likewise denied.

In a subsequent petition to the California Court of Appeal, Third District, petitioner presented a single claim that trial counsel rendered ineffective assistance in failing to object to admission of the facts underlying his prior convictions on the specific ground that the evidence was cumulative and unduly prejudicial under California Evidence Code 352, and also the alternative ground that admission of the evidence deprived him of a fair trial.  The California Court of Appeal denied the claim without further explanation, and the California Supreme Court denied a petition for review.

## III.  CLAIMS PRESENTED

The pending federal petition presents two distinct grounds for relief.  Each will be separately set forth and discussed herein, although in a different order of presentation than in the petition.  Petitioner claims:

(A)  The trial court made an error of constitutional magnitude when it permitted the prosecution to question him about the facts of his prior convictions over the defense's objection for relevance; and

(B)  Trial counsel rendered ineffective assistance by allowing the facts underlying petitioner's prior convictions to come into evidence at trial.  Trial counsel both (1) failed to

1   sufficiently prepare petitioner to testify in his own defense; and (2) failed to object to the

2   prosecutor's cross examination on the facts of his prior offeness, based on section 352 of the

3   California Code of Evidence and on federal constitutional grounds.

4                    IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

5                    An application for writ of habeas corpus by a person in custody under judgment of

6   a state court can be granted only for violations of the Constitution or laws of the United States.

7   28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

8   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

9   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

10  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

11  U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

12  AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

13  state court proceedings unless the state court's adjudication of the claim:

14              (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
15              determined by the Supreme Court of the United States; or

16              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
17              State court proceeding.

18  28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

19  *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

20  This court looks to the last reasoned state court decision to determine whether the law applied to

21  a particular claim by the state courts was contrary to the law set forth in the cases of the United

22  States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v.*

23  *Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

24  /////

25  /////

26  /////

V.  DISCUSSION

A.      The Trial Court's Evidentiary Ruling

        1.      Additional Background[2]

        Before trial, the court heard in limine motions regarding the admissibility of petitioner's prior convictions.  Following tentative rulings as to the extent of permissible impeachment and defense counsel's expression of uncertainty whether he would seek bifurcation of the prior convictions, the prosecutor made a motion to bifurcate.  When the trial court expressed its belief that bifurcation was necessary, because some of the priors were far more serious than the current charges, defense counsel responded that he was "not making a motion to bifurcate."  The prosecutor argued that she had a right to request bifurcation , and suggested that the defense appeared tactically to be seeking jury nullification.  The trial court ordered bifurcation, noting that it appeared to be highly appropriate in this case.  Later, during in limine motions, defense counsel indicated that he was "opposed" to bifurcation.

        Petitioner was arraigned on an amended information that alleged 10 prior strike convictions and two prior prison terms.  Petitioner formally denied the truth of each of these allegations.

        The trial court had previously ruled that the prosecution could offer evidence of petitioner's 1999 flight to avoid prosecution and his absence from the court's jurisdiction until 2005 as tending to show his consciousness of guilt of the presently charged offenses.  When the court ordered that both counsel advise all witnesses not to mention the three strikes law (*see* Cal. Penal Code § 667 (b)-(i)), defense counsel inquired whether petitioner could answer truthfully that he had absented himself, not because he was guilty of the present crimes, but because he "found out he was a three striker and [was] looking at life in prison."  The court ultimately ruled that petitioner could explain his flight as motivated by the fear of a life sentence, as a result of the

_____

[2] *See People v. Camacho*, *supra*, slip op. at 4-8.

6

operation of the three strikes law.

Following this in limine ruling, which allowed the jury to hear testimony concerning the issue of penalty and punishment, the prosecutor withdrew her motion to bifurcate, evidently concluding that under the circumstances the jury should be allowed to learn the nature of the prior convictions.  The trial court ruled that the entire case would be tried in a unitary proceeding.

After the jurors were selected and sworn, the trial court read the amended information including the prior conviction allegations.  The court noted that petitioner had entered a denial to each allegation.

Court documents were admitted and expert fingerprint testimony was elicited to establish that petitioner had been convicted of the 10 charged prior convictions.

Petitioner testified on his own behalf.  Regarding the prior convictions in 1986, defense counsel asked, "And is it indeed true that at the time you suffered the nine serious convictions that were referenced?"  Petitioner answered, "Unfortunately, yeah.  I was 17, made some bad choices, and I suffered those convictions."  Defense counsel next asked whether the "convictions" had occurred "all at the same time," and petitioner explained that "[t]he criminal conduct... was a one-night incident that took approximately six hours," when he "was 17."  When asked about his punishment for those offenses, petitioner responded that he did not "know the technicality of going to prison," but he acknowledged that he "did go to the California Youth Authority," which paroled him on December 12, 1989.

Asked whether he remained free from custody for a five-year period, petitioner testified, "Well, there was a '92 incident."  He explained that in 1992 he "suffered another conviction" and "was sent to the CDC, California Department of Corrections."

Petitioner testified to his version of the present offenses, including his belief that "helicopters... up in the sky... were following" him.  He also explained his failure to appear in court by stating, "I didn't come to court because I was afraid of the three-strike law and that

people wouldn't believe my story, because it seemed like nobody believed me."

During her initial cross-examination, the prosecutor pressed petitioner for more details of the "bad choices" that had resulted in the 1986 prior convictions.  Specifically, she asked him if he recalled, during those incidents, a co-defendant firing two or three gunshots through the front door of a residence.

Outside the jury's presence, defense counsel objected on relevance grounds "as to the facts of these convictions being the subject of cross-examination.  The fact of the conviction was brought into [sic] impeach, but we're not having a trial on what he did or didn't do.  The conviction is the only thing relevant."

The prosecutor countered that petitioner had opened the door when he said he had made bad choices.  The prosecutor argued, "[W]hen he went into the facts, he opened the door."

The trial court ruled: "That's correct.  Had you simply asked him, did you suffer a conviction of robbery or four counts of robbery, whatever it was at that time, that would have been the end of it.  But you have gone into that.  You have opened it."

When defense counsel protested that he had simply asked petitioner what he had been convicted of, the court responded, "I remember the words, bad choices.  Now, I don't know who said it, whether you, him, or perhaps both."  Defense counsel's objection was noted and overruled.

In addition to the incident of petitioner and some friends shooting a gun through someone's front door, the jury heard evidence that they robbed a convenience store using a shotgun to frighten the clerk and that petitioner drove to a restaurant where a friend fired a shotgun but no money was obtained because the business was closed.  The jury also heard about a robbery of another convenience store, and the robbery of a Lyon's restaurant in which a co-defendant shot and wounded an employee.  These incidents resulted in nine separate convictions.  The jury further heard evidence that, in 1992, petitioner was convicted following an incident in which his brother shot someone, apparently for telling petitioner to slow down as petitioner drove

1 by.

2        2.     Analysis

3        Petitioner contends that the trial court erred in violation of his right to due process

4 and a fair trial when it permitted the prosecution to question him about the facts of his prior

5 convictions over the defense's objection for relevance.

6        The United States Supreme Court has acknowledged that "rules concerning

7 evidence of prior offenses are complex, and vary from jurisdiction to jurisdiction." *Spencer v.*

8 *Texas*, 385 U.S. 554, 560 (1967).  Such evidence is often excluded except under various

9 circumstances, including "when the defendant has testified and the State seeks to impeach his

10 credibility." *Id*. at 560-61.  "The defendant's interests are protected by limiting instructions...

11 and by the discretion residing with the trial judge to limit or forbid the admission of particularly

12 prejudicial evidence even though admissible under an accepted rule of evidence." *Id*. at 561.

13        Under California law, "[i]f a defendant chooses to testify, the People may impeach

14 his credibility by showing that he has previously been convicted of a felony. *People v. Schader*,

15 71 Cal.2d 761, 773 (1969).  Impeachment evidence of prior felony convictions "must be limited

16 to identification of the conviction," however, and "courts will be zealous to insure that the

17 prosecuting attorney is not permitted to delve into the details and circumstances of the prior

18 crime..." *People v. Schader*, 71 Cal.2d 761, 773 (1969).

19        On direct appeal of petitioner's case, however, the California Court of Appeal,

20 Third District, ruled that he had "opened the door" to further cross examination exceeding the

21 bounds of *Schader* by delving into the details of prior crimes.  The court of appeal court held that

22 defense counsel's objection was properly overruled:

23               """Only relevant evidence is admissible [citations], and all relevant
              evidence is admissible unless excluded under the federal or
24               California Constitution or by statute. [Citations.] Relevant
              evidence is defined in Evidence Code section 210 as evidence
25               'having any tendency in reason to prove or disprove any disputed
              fact that is of consequence to the determination of the action.' The
26               test of relevance is whether the evidence tends "'logically,

1  naturally, and by reasonable inference" to establish material facts
   such as identity, intent, or motive. [Citations.]' [Citation.] The trial
2  court has broad discretion in determining the relevance of evidence
   [citations] but lacks discretion to admit irrelevant evidence.
3  [Citations.]" [Citation.]' [Citation.]" (*People v. Carter* (2005) 36
   Cal.4th 1114, 1166-1167.)
4
   Defendant claims the facts of the prior convictions were irrelevant,
5  and "added nothing of consequence," because he had "admitted the
   convictions and acknowledged the obvious, that criminal behavior
6  is a bad choice." We are not persuaded.
7  When arraigned on the operative pleading, defendant formally
   denied the truth of each prior conviction. Thus, evidence that each
8  had occurred was relevant to an issue of consequence to the
   determination of this action. (Evid.Code, § 210; cf. *People v.*
9  *Daniels* (1991) 52 Cal.3d 815, 857-858.) Defendant's ensuing
   acknowledgment of the priors during his direct examination may
10 have made certain facts elicited on cross-examination cumulative,
   but it did not make the facts irrelevant. "'Evidence may be relevant
11 even though it is cumulative; thus, the only ban on cumulative
   evidence is found in Evidence Code section 352.'" (*People v.*
12 *Scheid* (1997) 16 Cal.4th 1, 15, quoting *In re Romeo C.* (1995) 33
   Cal.App.4th 1838, 1843.) Defendant did not object that the
13 evidence was cumulative; any such contention is forfeited.
   (Evid.Code, § 353; *People v. Holt* (1997) 15 Cal.4th 619, 666-
14 667.)
15 Defendant next claims he "did not advert in any way to facts of the
   prior convictions, and, thus, there was no basis to cross-examine
16 him about them." This claim disregards the record.
17 On direct examination by his counsel, defendant claimed the
   criminal conduct underlying nine of the prior convictions had
18 occurred "all at the same time," during "a one-night incident that
   took approximately six hours," when he "was 17." On cross-
19 examination, the prosecutor elicited evidence that the priors had
   arisen, not from a single incident, but from a series of seemingly
20 unrelated acts against separate and several victims: a shooting at a
   residence, a robbery of a convenience store, an attempted robbery
21 of a restaurant, a robbery of a second convenience store, and a
   robbery and wounding of an employee of a second restaurant. By
22 portraying this crime spree as one incident lasting six hours,
   defendant minimized the conduct and opened the door to the
23 clarifying cross-examination that followed.

24 *People v. Camacho*, *supra*, slip op. at 9-11 (footnote omitted).

25        A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

26 corpus relief only if it rendered the state proceedings so fundamentally unfair as to violate due

1   process. *See generally Williams v. Taylor,* 529 U.S. 362, 375 (2000); *see also Drayden v. White*,

2   232 F.3d 704, 710 (9th Cir. 2000).  A "petitioner bears a heavy burden in showing a due process

3   violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.

4   2005).

5          Whether the admission of the evidence of prior crimes violates due process

6   appears to be an open question in the Supreme Court's jurisprudence.  *See Estelle*, 502 U.S. at 75

7   n.5 ("we express no opinion on whether a state law would violate the Due Process Clause if it

8   permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.");

9   *Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (noting that the Supreme Court has

10  denied certiorari at least four times on the propensity evidence issue reserved in *Estelle*).

11         In *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit

12  held:

13         Under AEDPA, even clearly erroneous admissions of evidence that
           render a trial fundamentally unfair may not permit the grant of

14         federal habeas corpus relief if not forbidden by "clearly established
           Federal law," as laid out by the Supreme Court. 28 U.S.C. §

15         2254(d). In cases where the Supreme Court has not adequately
           addressed a claim, this court cannot use its own precedent to find a

16         state court ruling unreasonable. *Musladin,* 549 U.S. at 77, 127
           S.Ct. 649.

17

18         The Supreme Court has made very few rulings regarding the
           admission of evidence as a violation of due process. Although the

19         Court has been clear that a writ should be issued when
           constitutional errors have rendered the trial fundamentally unfair,

20         *see Williams,* 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made
           a clear ruling that admission of irrelevant or overtly prejudicial

21         evidence constitutes a due process violation sufficient to warrant
           issuance of the writ. Absent such "clearly established Federal law,"

22         we cannot conclude that the state court's ruling was an
           "unreasonable application." *Musladin,* 549 U.S. at 77, 127 S.Ct.

23         649. Under the strict standards of AEDPA, we are therefore
           without power to issue the writ on the basis of Holley's [erroneous

24         admission of evidence] claims.

25  *Holley*, 568 F.3d at 1101.

26  /////

1    Since the right petitioner asserts- to be free from admission of prejudicial

2    evidence, including evidence of prior crimes- has not been clearly established by the Supreme

3    Court as required by AEDPA, the claim should be denied.  *See Alberni*, 458 F.3d at 867.  In any

4    event, petitioner's claim would fail even under Ninth Circuit precedent.  Under Ninth Circuit

5    precedent, "[a]dmission of evidence violates due process only if there are *no* permissible

6    inferences the jury may draw from it."  *Id*. (internal quotation omitted) (emphasis in original); *see*

7    *also Leavitt v. Arave*, 383 F.3d 809, 829 (9th Cir. 2004) (holding that due process is violated if

8    evidence of prior bad acts "goes only to character and there are *no* permissible inferences the jury

9    may draw from it"; *Estelle*, 502 U.S. at 68-70 (rejecting due process challenge to admission of

10   prior-bad-act propensity evidence because it "was relevant to an issue in the case").  Even upon a

11   showing of no permissible inferences, habeas corpus relief may not be granted unless admission

12   of the evidence had a "substantial and injurious effect" upon the jury's verdict.  *Brecht v.*

13   *Abrahamson*, 507 U.S. 619, 622 (1993).

14   As previously noted, petitioner formally denied the truth of each prior conviction

15   when arraigned on the operative pleading, thus evidence that each had occurred was relevant to a

16   contested issue in the case.  Although California law generally limits impeachment evidence

17   regarding a defendant's prior felony convictions to identification of the conviction,

18         when a defendant voluntarily testifies in his own defense[,] the
     People may [ ] fully amplify his testimony by inquiring into the
19   facts and circumstances surrounding his assertions, [and introduce]
     evidence through cross-examination which explains or refutes his
20   statements or the inferences which may necessarily be drawn from
     them. ...[C]ross-examination [need not] be confined to a mere
21   categorical review of the matters, dates or times mentioned in the
     direct examination... *It may be directed to the eliciting of any*
22   *matter which may tend to overcome or qualify the effect of the*
     *testimony given by him on direct examination.*

23

24   *Shader*, 71 Cal.2d at 770-71 (emphasis added) (citation omitted).

25   Petitioner voluntarily testified in his own defense and made statements alluding to

26   and describing the nature and gravity of his prior convictions.  The state appellate court held that

1  this testimony "opened the door" to additional cross examination explaining, refuting,

2  overcoming, or qualifying the assertions he had made.  Such a determination of state law is

3  binding on this court and cannot be challenged here.  *See Estelle*, 502 U.S. at 67-68 ("It is not the

4  province of a federal habeas court to reexamine state-court determinations on state-law

5  questions"); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state

6  court's interpretation of state law, including one announced on direct appeal of the challenged

7  conviction, binds a court sitting in habeas corpus.").

8          There was a rational and constitutionally permissible inference to be drawn from

9  the admitted evidence regarding the facts of petitioner's prior offenses: it concerned petitioner's

10  credibility as a witness and in particular the credibility of his testimony that his prior convictions

11  resulted simply from "bad choices" and that the criminal conduct underlying nine of the prior

12  convictions had occurred "all at the same time."  *See, e.g., United States v. Bailleaux*, 685 F.2d

13  1105, 1110 (9th Cir. 1982) (permitting government to inquire into the facts underlying a prior

14  conviction where the defendant first testified about the crime on direct examination).  Given the

15  permissible inference to be drawn, the evidence did not render petitioner's trial fundamentally

16  unfair in violation of due process.

17           Moreover, admission of the evidence did not have a "substantial and injurious

18  effect" upon the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993).  The jury was

19  instructed to consider the evidence regarding the facts of petitioner's prior convictions "only

20  when deciding whether the defendant was previously convicted of the crime alleged."

21  (Reporter's Transcript ("RT") at 829-30.)  The trial court further instructed: "Do not consider this

22  evidence as proof that the defendant committed any of the crimes with which he is currently

23  charged [or] for any other purpose."  (RT at 830.)  This limiting instruction mitigated any danger

24  that the jury would use evidence of petitioner's prior convictions as evidence of propensity to

25  commit crimes.  It is presumed that the jury followed the court's instructions in this regard.

26  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.")

1   (citing *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

2          For these reasons, the admission of evidence regarding the facts underlying

3   charged prior offenses did not render petitioner's trial fundamentally unfair in violation of due

4   process and did not have substantial and injurious effect or influence in determining the jury's

5   verdict.  Relief should be denied.

6          B.      Trial Counsel's Performance

7          Petitioner also claims that trial counsel rendered ineffective assistance of counsel.

8   In particular, petitioner alleges: (1) counsel failed to adequately prepare him to testify in his

9   defense (i.e. failed to advise him to answer only "yes" or "no" when asked whether he suffered

10  the charged prior convictions); and (2) counsel failed to object to the prosecutor's subsequent

11  cross-examination about the facts of prior conviction as cumulative and unduly prejudicial

12  pursuant to section 352 of the California Evidence Code and on federal constitutional grounds.

13         The Sixth Amendment guarantees a criminal defendant the effective assistance of

14  counsel.  A showing of ineffective assistance of counsel has two components.  First, a petitioner

15  must show that, considering all the circumstances, counsel's performance fell below an objective

16  standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  In

17  assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that

18  counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v.*

19  *Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689), and that counsel

20  "exercised acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*,

21  898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

22         The second factor required for a showing of ineffective assistance of counsel is

23  actual prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice

24  is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

25  result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a

26  probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Williams*, 529 U.S.

1   at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

2   As discussed in previous orders of this court and in petitioner's filings in response

3   thereto, this claim was not fully exhausted prior to the filing of this action.  For this reason,

4   petitioner's two allegations of ineffective assistance of counsel will be separately set forth and

5   discussed herein.

6           1.      Counsel's Preparation

7   In one allegation of his ineffective assistance of counsel claim, petitioner contends

8   that counsel failed to sufficiently prepare him to testify in his own defense.  In particular,

9   petitioner alleges that counsel failed to instruct him to answer only "yes" or "no" in response to

10  questions during direct examination about his prior convictions, which caused him to "open the

11  door" to further examination by the prosecution on the facts of those convictions.

12  This portion of the claim was not properly exhausted by being fairly presented to

13  the California Supreme Court prior to the filing of this action.  The Ninth Circuit has held that a

14  federal court may deny an unexhausted claim on the merits only when it is perfectly clear that the

15  applicant does not raise even a colorable federal claim.  *Cassett v. Stewart*, 406 F.3d 614, 623

16  (9th Cir. 2005).

17  Assuming, solely for purposes of this discussion, that counsel's preparation of

18  petitioner for his testimony was deficient, the claim is not colorable because petitioner fails to

19  demonstrate prejudice. First, any prejudicial effect from the evidence was at least partially

20  mitigated by the court's limiting instructions.  The jury was instructed:

21          If you find that a witness has been convicted of a felony, you may
            consider that fact only in evaluating the credibility of the witness's
22          testimony.  The fact of a conviction does not necessarily destroy or
            impair a witness's credibility.  It is up to you to decide the weight
23          of that fact and whether that fact makes the witness less believable.

24          If you find that a witness has committed a crime or other
            misconduct, you may consider that fact only in evaluating the
25          credibility of the witness's testimony.  The fact that the witness
            may have committed misconduct does not necessarily destroy or
26          impair a witness's credibility.  It is up to you to decide the weight

1   of that fact and whether that fact makes the witness less believable.

2   (RT at 819.)  The jury was further instructed:

3           Consider the evidence presented on each allegation [of a prior
            conviction] only when deciding whether the defendant was
4           previously convicted of the crimes alleged... [¶] Do not consider
            this evidence as proof that the defendant committed any of the
5           crimes with which he is currently charged or for any other purpose.

6   (RT at 829-30.)  The jury is presumed to have followed these instructions.  *Weeks*, 528 U.S. at

7   234 ("A jury is presumed to follow its instructions.") (citing *Richardson*, 481 U.S. at 206).

8           Moreover, substantial evidence demonstrated petitioner's guilt.  The prosecution

9   and defense appeared to agree that petitioner's actions were not in dispute.  With respect to the

10  offenses of conviction (evading a peace officer and driving under the influence), the central issue

11  according to the defense was whether petitioner harbored the requisite intent, in light of the

12  evidence of voluntary intoxication and mental impairment.  (RT at 788.)  Although the jury was

13  instructed that evidence of voluntary intoxication and mental impairment could be considered for

14  the limited purpose of deciding intent (RT at 831-32), petitioner's defense that "I used so much

15  meth I couldn't form the intent," as the prosecutor described it, was not sympathetic or

16  persuasive.

17          Petitioner's jury retired to deliberate at 2:35 p.m. on the tenth day of trial and

18  returned a verdict on the morning of the twelfth day.  (Clerk's transcript ("CT") at 135-36, 181-

19  82.)  During deliberations, the jury requested a DVD player to watch People's exhibit number

20  five,[3] a read back of testimony of two law enforcement officers, and also a "legal definition or

21  clarification regarding intent," the latter of which the Court declined to give.  Ultimately the jury

22  convicted petitioner of evading a police officer, driving under the influence, and all of the

23  charged priors but could not reach an agreement on count one, taking a motor vehicle without the

24  owner's consent.  All jurors indicated that further deliberations would not be useful and count

25

26          [3] People's exhibit #5, designated "Caltrans chase" and dated 10/22/99, was presumably a
    recording of some part or all of the vehicle chase.

one was dismissed in the interests of justice.  The length of deliberations, nature of requests from the jury, and the fact that the jury failed to reach a verdict on count one indicate that the jury diligently and conscientiously performed its duty.  Nothing in the trial record indicates that the jury might have improperly relied on evidence of petitioner's prior crimes to find him guilty of the offenses of conviction.

Petitioner bears the burden of "affirmatively prov[ing] prejudice." *Strickland*, 466 U.S. at 693.  Under the circumstances of this case, he fails to do so.  There is no reasonable probability that the result of the proceeding would have been different had the details of his prior convictions not come into evidence due to counsel's alleged failure to prepare him to testify. Since this unexhausted portion of petitioner's claim is not a colorable federal claim, it should be denied on the merits.

2.	Counsel's Objections

As discussed, counsel objected to the prosecutor's cross examination on the facts of petitioner's prior convictions solely for relevance.  Petitioner contends that there was no reasonable explanation for counsel not to also specifically object to the evidence as cumulative and overly prejudicial pursuant to section 352 of the California Code of Evidence, and on federal constitutional grounds including the guarantee of due process and a fair trial.

This portion of petitioner's ineffective assistance of counsel claim was properly exhausted prior to the filing of this action.  The state appellate court's denial of petitioner's habeas corpus petition setting forth this allegation is the last reasoned state court decision applicable to this portion of the claim.  Although the court of appeal denied the claim on habeas corpus without explanation, the decision constitutes a decision on the merits for AEDPA purposes. *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

/////

1         As an initial matter, the Supreme Court has never clearly established a rule that it

2   is deficient performance for trial counsel not to take a particular action at trial simply because

3   there is "nothing to lose" by trying.  *See Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009).

4         Moreover, an objection to the prosecutor's cross examination on the facts

5   underlying petitioner's prior convictions would not have been successful to the extent it was

6   based on due process and the right to a fair trial.  As repeatedly set forth herein, petitioner

7   formally denied the allegations regarding his prior convictions prior to trial.  The fact that he

8   subsequently admitted the convictions during his testimony did not make further cross

9   examination by the prosecution a violation of due process.  *See Estelle*, 502 U.S. at 69 (holding

10  that the prosecution's burden of proof is not relieved by a defendant's tactical decision not to

11  contest an essential element of an offense).

12        It further appears that a motion pursuant to section 352 of the California Code of

13  Evidence would likewise have been futile.  Section 352 provides:

14        The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its

15        admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the

16        issues, or of misleading the jury.

17  Cal. Evid. Code § 352.

18        Under California law, impeachment evidence is generally limited to identification

19  of the conviction (*Schader*, 71 Cal.2d at 773), however, the trial record reveals that the court

20  specifically ruled that petitioner had "opened the door" to the evidence at issue with his reference

21  to "bad choices" on direct examination.  (RT at 503-04.)  The evidence at issue did not

22  necessitate undue consumption of time, as the prosecutor's cross examination on the facts of the

23  prior convictions spans only approximately 12 pages in the trial transcript.  (*See* RT at 505-17.)

24  Nor did the evidence create substantial danger of confusing the issues or misleading the jury.

25        This leaves "substantial danger of undue prejudice" as the only possible basis for

26  excluding the evidence under section 352.  In assessing whether evidence is unduly prejudicial

within the meaning of section 352, the question is whether the evidence "tends to evoke an emotional bias against the defendant with very little effect on the issues..." *People v. Crew*, 31 Cal.4th 822, 842 (2003).  Where an *uncharged* prior conviction is sought to be introduced for impeachment purposes, factors to be considered include whether the prior conviction reflects adversely on an individual's honesty or veracity, the nearness or remoteness in time of the conduct, whether the conduct is for the same or substantially similar conduct as the charged offense(s), and what the effect will be if the defendant does not testify out of fear of being prejudiced because of the impeachment by prior convictions.  *People v. Mendoza*, 78 Cal.App.4th 918, 925 (2000).

Here, the facts of the prior convictions certainly reflected on petitioner's credibility, as he had testified on direct examination that the prior convictions consisted of "bad choices" all occurring in a "one-night incident that took approximately six hours." (RT at 461-63.)  As demonstrated by petitioner's subsequent testimony during cross examination, the prior convictions were much more serious than his initial testimony implied, and involved violence, the use of firearms, and gunshot victims."  Also, robbery and attempted robbery are crimes of moral turpitude.  *See People v. Collins*, 42 Cal.3d 378, 395 (1986).

Petitioner's prior convictions were not similar to the current offenses, and so this factor would not favor the exclusion of the priors.  Petitioner's prior convictions could be fairly characterized as remote, occurring in the 1980s and 1990s (*see* RT at 505-17), which would generally lessen their probative value.  Even a fairly remote uncharged prior conviction can be admissible, however.  *See People v. Green*, 34 Cal.App.4th 165, 183 (1995) (admitting evidence of a 20 year old prior conviction).  Moreover, as discussed, the offenses in this case *were* charged and had to be proved by the prosecution beyond a reasonable doubt.

Petitioner fails to cite any specific authority tending to show that undue prejudice would have been a valid basis for exclusion.  The details of the prior convictions were potentially damaging to the defense's strategy, which appeared to be, in part, an attempt at jury nullification.

1  The evidence was not, however, unduly prejudicial within the meaning of section 352 and an

2  objection on this ground, or on federal constitutional grounds, would likely have been futile.

3  Counsel cannot be found ineffective for failing to make a futile motion.  *See Juan H. v. Allen*,

4  408 F.3d 1262, 1273-74 (9th Cir. 2005) (holding that counsel cannot have been ineffective for

5  failing to raise a meritless objection).

6        Finally, assuming again solely for purposes of this discussion that counsel's

7  failure to make specific objections constituted deficient performance, the claim would still fail

8  for lack of prejudice, as discussed *supra*, in connection with petitioner's other allegation

9  regarding counsel's performance.  For these reasons, the state court's rejection of this portion of

10  petitioner's ineffective assistance of counsel claim is not contrary to, or an unreasonable

11  application of the *Strickland* standard and relief should be denied.

12                                VI.  CONCLUSION

13        For all these reasons, IT IS HEREBY RECOMMENDED that:

14      1.     Petitioner's application for writ of habeas corpus be DENIED; and

15      2.     Petitioner's February 14, 2011 motion to stay be DENIED as moot.

16        These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

18  one days after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21  shall be served and filed within seven days after service of the objections.  Failure to file

22  objections within the specified time may waive the right to appeal the District Court's order.

23  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

24  1991).  In any objections he elects to file Kelsaw may address whether a certificate of

25  appealability should issue in the event he elects to file an appeal from the judgment in this case.

26  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

1  certificate of appealability when it enters a final order adverse to the applicant).

2  DATED: April 26, 2011

3  _Charlene H. Sorrentino_

4  CHARLENE H. SORRENTINO
   UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26